RECEIVED
IN LAKE CHARLES, LA
JAN 18 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| FIDELITY & DEPOSIT COMPANY OF MARYLAND | : | DOCKET NO. 05-197 |
| VS. | : | JUDGE TRIMBLE |
| F.D. SHAY CONTRACTOR, INC.; FREDERICK DANIEL SHAY; AND SUE SHAY | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the Court is a "Motion for Summary Judgment against F.D. Shay Contractor, Inc., Frederic Daniel Shay and Sue Shay" (doc. #19) (collectively sometimes referred to as "Shay") filed by defendant, Fidelity & Deposit Company of Maryland ("F & D"), wherein the mover seeks judgment in its favor against Shay, individually and *in solido* pursuant to Federal Rule of Civil Procedure 56. F & D specifically seeks (1) reimbursement for all sums expended in satisfaction of the claims against the Bonds and/or under the Contract, (2) all losses and expenses, including costs and attorneys' fees incurred by F & D as a consequence of having executed the Bonds on the construction project, without prejudice to F & D's rights to seek additional losses as they are incurred; and (3) all costs and attorneys' fees incurred in bringing the captioned action, without prejudice to F & D's rights to seek additional losses as they are incurred.

## FACTUAL STATEMENT

F & D is a surety company which issues payment and performance bonds for selected contractors. F.D. Shay Contractor, Inc. is a contractor in the business of performing construction work. F. D. Shay is required to acquire bid, performance and payment bonds to bid on state public

works projects. On or about August 15, 1996 Shay executed an "Agreement of Indemnity" with F & D as the surety. The indemnity agreement included personal indemnifications by Frederick Daniel Shay and Sue Shay. F.D. Shay Contractor, Inc. subsequently entered into a construction contract with the Louisiana Department of Transportation and Development ("DOTD")(Project Nos. 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 and 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) for the widening of Nelson Road and the elimination of Cove Lane in Lake Charles. Pursuant to the Indemnity Agreement, F & D executed statutory payment, performance, and retainage bonds, bearing No. CMB8159058 ("Bonds").

F.D. Shay commenced work on the construction project in April, 2000. On or about April 25, 2003, the DOTD issued a "Notice of Default to Contractor" and "Notice of Intent to Place Surety in Default" to F.D. Shay and F & D. In that same correspondence, the DOTD made demand on F & D to complete the project. Through correspondence dated May 1, 2003, F & D acknowledged the notices previously issued by the DOTD and proposed a meeting on May 2, 2003 to discuss completion of the project and a possible lift of the default of F.D. Shay.

On or about May 15, 2003, the DOTD and F & D entered in to a Takeover Agreement ("Agreement") which provided that F & D would arrange for the completion of the project. On that same day, F.D. Shay advised F & D that it owed sub-contractors and suppliers for work completed and for materials supplied on the project. F & D paid F.D. Shay's contractors and suppliers pursuant to its obligations under the payment bond.

F.D. Shay served as the completion contractor until July 21, 2003 when F & D advised F.D. Shay that it had been disqualified as the completion contractor. F & D retained a new completion contractor and supervisor to finish the project. F & D alleges that it spent approximately $1,843,891.47 less recovery of $567,856.63 in consideration for and in reliance on the

representations made by Shay. F & D also alleges that it spent in excess of $49,043.30 in connection with its investigation and settlement of claims on the project and in connection with enforcing the Indemnity Agreement.

Shay denies that it was in default, maintains that it was improperly removed, and disputes its disqualification from the project.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[2] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[3] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[4] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[5] If the evidence is merely

---

[1] Fed. R.Civ. P. 56(c).

[2] *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[5] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

3

colorable, or is not significantly probative, summary judgment may be granted."[6]

## LAW AND ANALYSIS

Shay maintains that the Indemnity Agreement is unenforceable as a contract of adhesion. Shay also disputes that it defaulted on its contract with the DOTD and was improperly removed. Hence, Shay argues that the motion for summary judgment should be denied.

*Adhesion Contract*

Shay contends that the Indemnity Agreement between F.D. Shay Contractors, Inc. ("F.D. Shay") and F & D is a contract of adhesion. Adhesion contract is a term descriptive of standard form printed contracts prepared by one party and submitted to another on a take it or leave it basis, wherein there is often no true equality of bargain power.[7] F & D maintains that this defense was not pleaded, thus Shay has waived this defense. The Court has reviewed the Complaints and Answers for both parties and finds that Shay failed to plead this affirmative defense in accordance with Federal Rules of Civil Procedure 8(c) and 12(b), the failure of which results in the waiver of the defense and its exclusion from the case.[8]

Be that as it may, even assuming that the defense is properly before the Court, the indemnity agreement involved here can not be considered an adhesion contract. Shay maintains that there are questions of material fact as to whether the Indemnity Agreement sued upon is invalid and unenforceable as a contract of adhesion. To support its position, Shay avers that the Indemnity

---

[6] *Anderson*, 477 U.S. at 249-50.

[7] *Standard Oil Company of California v. Perkins*, 347 F.2d 379 (9th Cir. 1965).

[8] *Jakobsen v. Massachusetts Port Authority*, 520 F.2d 810, 813 (1st Cir. 1975); *State Farm Mutual Automobile Ins. Co. v. Mid-Continent Casualty Co.*, 518 F.2d 292 (10th Cir. 1975); *Camalier & Buckley-Madison, Inc. v. Madison H., Inc.*, 513 F.2d 407, 420, 421 (C.A.D.C. 1975).

4

Agreement was a standard form contract in which it had no input concerning the contractual provisions, and Shay was not permitted to modify the terms of the agreement. Consequently, Shay argues, its only option was to sign the agreement as drafted by F & D.

An adhesion contract is normally found to exist only within the context of a consumer's relation to a business or public enterprise.[9] The concept of an adhesion contract where business enterprises bargain among themselves, is not meant to apply merely because one of them is in a superior bargaining position. The fact that F & D is more powerful than F.D. Shay does not mean that F.D. Shay can be relieved of contractual obligations which it freely assumed. Furthermore, in his deposition testimony, Frederic Shay admitted that F & D had bonded F.D. Shay on public works projects for the past three to five years.[10] Thus, the Court finds that the Indemnity Agreement is not a contract of adhesion.

*Shay's Dispute of the Default/Lack of Good Faith*

Shay disputes that it defaulted on its contract with the DOTD and that the Surety lacked good faith in making payments to the DOTD and performing to complete the project. Again, F & D asserts that the issue lack of good faith is an affirmative defense which Shay must have plead, and because it was not, this defense is waived. In reviewing the pleadings, the Court finds that Shay did not plead that the payments and performance of F & D made pursuant to the Indemnity Agreement lacked good faith. Thus, the Court concludes that this defense is waived. However, again assuming the defense of lack of good faith is properly before the Court, we do not find that F & D lacked good

---

[9] See *OTTO v. Cities Service Co.*, 415 F.Supp. 837 (W.D. La.1976); *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J.358, 161 A.2d 69 (1968).

[10] Frederick Daniel Shay Deposition, p. 14, line 8.

5

faith.

Under the Indemnity Agreement, Shay agreed to the following indemnification provision:

### INDEMNITY

SECOND: The contractor and Indemnitors, shall exonerate, indemnify, and keep indemnified the surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interests, court costs and counsel fees) and from and against any and all such losses and/or expenses which the surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds. (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Such payment shall be equal to the amount of the reserve set by the Surety. In the event of any payment by the Surety the Contractor and Indemnitors further agree that in any accounting between the Surety and Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts to be disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be *prima facie* evidence of the fact and amount of the liability to the Surety.[11]

Contracts have the effect of law between the parties and, in the absence of ambiguity, courts are bound to enforce contracts as written.[12] Indemnity Agreements are valid and enforceable under Louisiana law.[13] The language of the Indemnity Agreement provides that Shay is obligated to

---

[11] Agreement of Indemnity, p. 1, Exhibit B, Tab 1 of William C. Sherk Affidavit.

[12] *La. Nat'l Leasing corp. v. Family Pools, Inc.*, 345 so.2d 480, 482 (La. 1977).

[13] See *U.S. Fid. & Guar. V. Diggs*, Docket No. 03 CV 1023, 2004 WL 32917 (E.D. La. 2004); *U.S. Fid. & Guar. V. Primelink Sys., Inc.*, Docket No. 02 CV 2629, 2003 WL 21715017 (E.D. La. 2003); *Capitol Indem. Co. v. Favorite*, Docket No. 01 CV 1862, 2002 WL 1809081 (E.D. La. 2002).

indemnify F & D "from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which [F &D] may sustain and incur . . . by reason of having executed the Bonds. . . .[14] The Indemnity Agreement further provides that . . . the surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts to be disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed. . .

Shay denies that it was in default and was improperly removed. Shay argues that it was disqualified – or debarred by the DOTD without the opportunity for a hearing to challenge the disqualification, as required by Louisiana Revised Statute 48:295.2(D).[15] In support of its position

---

[14] See Indemnity Agreement, Tab 1 of Exhibit B.

[15] Section 292.2, in pertinent part, regarding the authority to debar or to suspend is as follows:
**A. Applicability.** This section applies to a debarment for cause from consideration for awarding of contracts and participating in performance of contracts as a contractor, subcontractor, consultant, or subconsultant or a suspension from consideration during an investigation where there is probable cause for debarment.

* * *

**D. Hearing and decision.**
(1)(a) Initiation of hearing. A debarment or suspension hearing shall be initiated by issuance of written notice to the contractor by the debarring committee.
(B) Notice of hearing. Written notice to the contractor shall include all of the following:

(i) A statement of the time, place, and nature of the hearing.
(ii) A statement of the legal authority and jurisdiction for the hearing.
(iii) A reference to the particular cause for debarment or suspension as set

that it was not in default, Shay submits a "Time Chronology" that summarizes the sequence of events that lead up to Shay's allegedly improper removal for the project, as well as supporting documents and relevant excerpts from Frederic Shay's deposition. Shay argues that this creates a genuine issue of material fact which would preclude summary judgment for F & D in this matter.

---

forth in Subsection C of this Section.
  (iv) A short, plain, and concise statement of the cause for debarment or suspension.
  (v) A statement that failure to participate in the hearing shall serve to waive any and all further administrative remedies.
 (c) The debarment committee shall afford the contractor an opportunity to respond and present evidence on issues of fact relevant to the proposed suspension or debarment.
  (i) The debarment committee shall afford the contractor an opportunity to respond and present evidence on issues of fact relevant to the proposed suspension or debarment.
  (ii) The debarment committee may, in its discretion, request written statements of the department's position from the department. A copy of such written statement submitted by the department shall be provided to the contractor.
  (iii) Informal disposition may be made of any proposed suspension of debarment by stipulation, agreed settlement, consent order, or default.
 (d) Record.
 The hearing record shall contain:
  (i) A copy of the written notice of hearing.
  (ii) A return of the service of notice to the contractor of the hearing.
  (iii) A transcript of the proceedings before the debarment committee.
  (iv) Any document or exhibit presented for consideration to the debarment committee by the contractor or the department.
  (v) Any decision, opinion, or reports rendered by the debarment committee.
 (e) The debarment committee shall have all proceedings before it recorded electronically at the cost of the department.
 (f) Findings of fact made by the debarment committee shall be based exclusively on the hearing evidence and on matters in the notice of hearing.
 (2) The debarment committee shall issue a written decision to debar or suspend. The decision shall provide all of the following:
  (a) State the reasons for the action taken.
  (b) Inform the debarred or suspended contractor, subcontractor, consultant, or subconsultant involved of its rights to administrative and judicial review as provided in this Part.

While the Time Chronology does reveal alleged delays in the project, the majority of which took place prior to Shay being instated as the first completion contractor, it also reveals that Shay did not assert to the DOTD its rights to a hearing before the debarring committee.[16] The Court finds that in this proceeding, not only has Shay waived its rights to a debarment hearing, that right must be asserted against the DOTD[17], not F & D.

Good faith is defined as "honesty in fact in the conduct or transaction concerned and the observance of reasonable commercial standards of fair dealing."[18] The Time Chronology presented by Shay does not reveal that F & D lacked good faith in making payments and completing the contract. After the DOTD issued a notice of default to Shay, F & D attempted to use the contractor to complete the project. Shay failed to complete the contract pursuant to the Takeover Agreement. The DOTD disqualified Shay as the completion contractor and also issued a notice of intent to disqualify F & D. F & D exercised its own rights for its own protection against further loss as surety, guarantor, and creditor.[19] Shay has presented no evidence that would create a genuine issue of material fact that F & D lacked good faith when it made payments to the subcontractors and suppliers and completed the project. Thus, F & D is entitled to summary judgment in its favor as a matter of law.

---

[16] The summary judgment evidence does establish that F & D requested a hearing concerning its being subject to being placed in default.

[17] According to the summary judgment evidence submitted, Shay did not, nor does it have any plans to file a cause of action against the DOTD. Frederick Daniel Shay Deposition, Exhibit 3, p. 66.

[18] See, e.g., La. R.S. 39:1553.

[19] See, e.g. *Lambert v. Maryland Cas. Co.*, 418 So.2d 553, 561 (La.1982),
9

*Damages*

In its motion for summary judgment, F & D presents evidence of the amount of its damages. Shay has not presented any summary judgment evidence that disputes these amounts. Thus, there is no genuine issue of material fact for trial as to F & D's damages.

## **CONCLUSION**

Based on the foregoing, the motion for summary judgment filed by plaintiff, Fidelity & Deposit Company of Maryland will be granted.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 18th day of January, 2006.

                                                                                   JAMES T. TRIMBLE, JR.
                                                                                    UNITED STATES DISTRICT JUDGE